# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### JULY TERM, 1835.

In the matter of the Guardianship of ABRAHAM VAN HOUTEN, a Minor.

Upon the father's death, the mother succeeds him as guardian by nature of her minor child; but when a testamentary guardian is constituted by the father, the natural right of the mother must yield to the will of the father.

To take away from the mother this natural right, the father's intention should be manifest.

Testamentary guardians stand *in loco parentis*, and supersede guardians appointed by the orphans' court.

A testator, after giving the residue of his estate to his infant son, ordering his executors to invest the personal estate and the proceeds of his real estate for his benefit, directs as follows: " I do further order that my executors give unto my said son, A. V. H., out of my estate, a good college education and a decent support until he arrive at the age of twenty-one years :" *Held*, that the right and power of directing the education of the infant is vested in the executors, and that they are entitled to the custody of his person so far as is necessary and proper for the purposes of education.

ON the twenty-second of January, 1834, Brant Van Blarcom and John S. Van Winkle, executors of the last will and testament of Abraham Van Houten, deceased, filed their petition; stating that the said Abraham Van Houten, formerly of the township of Paterson, in the county of Essex, by his last will and

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

testament, bearing date on the sixteenth day of February, 1825, after giving divers legacies and bequests, did give, devise and bequeath as follows, (*pro ut* state of the case.)   That the testator appointed the petitioners executors of his said will, and died about the fifteenth day of May, 1825, leaving the said will in full force, and also leaving Abraham Van Houten, an infant of the age of about six months, his only child.   That the petitioners took upon themselves the execution of the said will and of the trusts therein contained.   That after the death of the testator, the said infant remained in the custody and under the guidance and direction of his mother, Rachel Van Houten, until the month of November, 1832, when the petitioners, by the consent of the said Rachel Van Houten, and in execution of the will of the said testator, took the said infant into their custody, and sent him to school near Newburg, in the state of New-York, where he remained for about six months, when he returned home to his mother in Paterson.   That the said school being about to be discontinued, the petitioners resolved to send him to another school in Newburg, which in their opinion was a suitable place for his education, and gave notice of such their determination, and of the time when it would be necessary for the infant to go, to the said Rachel Van Houten, who at her own request superintended his preparations for going to school.   That at the time appointed, the petitioners called for the purpose of taking the infant to school, when they were informed that the mother, without consulting the petitioners, and against their will, had removed the said infant from home, and kept him and still keeps him from the custody of the petitioners.   The petitioners insist, that by the will of the said testator, they are guardians of the estate of the said infant, and also of his person, so far at least as to have the custody and control of his person for the purpose of educating him according to the directions contained in the will of the said testator.   The prayer of the petition is, that the said infant may, by the order of the court, be restored to the custody and guardianship of the petitioners, for the purpose of being educated according to the order and directions contained in the said will.

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

On the eighteenth of March, 1834, the said Rachel Van Houten filed her petition, stating that Abraham Van Houten, formerly of Paterson, deceased, by his last will and testament, dated the sixteenth day of February, 1835, after divers legacies and bequests, devised as follows, (*pro ut* state of the case,) and appointed Brant Van Blarcom and John S. Van Winkle, executors of his said will.. That the testator died on the fifteenth day of May, 1825, leaving Abraham Van Houten, his only child, an infant then aged about eight months. That the executors proved the will, and took upon themselves the execution thereof. That they collected the rents of the real estate, and the interest upon the bonds and other securities, and that the estate in their hands, belonging to the said infant, is amply sufficient for his support and education. That the petitioner is the mother of the said infant, and has been appointed his guardian by the orphans' court of the county of Essex. That by virtue of her letters of guardianship, she hath always had the custody of the person of the said infant until the month of October, A. D. 1832, when he was sent to school at Newburg, with the consent of the petitioner. That the executors have paid the petitioner all moneys necessary for his maintenance and education, up to the month of July, 1832, the last payment having been made in the month of October, 1832; since which time, they have refused to pay for the maintenance and education of the said infant, and the petitioner has been compelled to advance a large sum *of money* out of her own funds for his support and education, which the executors refuse to repay. The petitioner prays that the executors may be ordered to repay the moneys so advanced by her, and also to pay hereafter to the petitioner, as guardian of said infant, for his maintenance and education, such reasonable sum, and in such payments, as may appear just and proper.

The matter was heard upon the petitions, and upon the following statement of facts agreed upon by the counsel of the respective parties, to be used as evidence in the case, viz. :

" The will of Abraham Van Houten, deceased, and the probate thereof by the petitioners, are admitted ; also that letters of guar-

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

dianship were granted to defendant by the orphans' court of the county of Essex; that Abraham Van Houten died on the fifteenth day of May, 1825, and that he left an only son, by his wife Rachel Van Houten, who at the time of his father's death was about six months old, and is now the subject of this controversy; that in the month of November, 1832, Brant Van Blarcom, one of the executors of Abraham Van Houten, deceased, went to Rachel Van Houten and informed her that the executors of Abraham Van Houten, deceased, intended to send the said Abraham Van Houten to some school out of Paterson, for the purpose of educating him as directed by the will of his father, he before that time having been at school in Paterson; that he must go to school either at New-Brunswick, New-Jersey, Caldwell, New-Jersey, or Newburg, New-York, at each of which places there was a proper school for him, and that she might choose to which of the three he should be sent; that after some hesitation she expressed a preference to Newburg, as a Miss Shultz, who had formerly resided in Paterson and in whom she had confidence, was then about to open a school there, and if he must go to one of the said three places she wished he might be taken there; that accordingly the said Brant Van Blarcom contracted with the teacher of said school for the tuition of the said Abraham; that he was taken thither by the said Brant Van Blarcom and John S. Van Winkle, and was accompanied by Catharine Van Houten, the daughter of Rachel Van Houten; that he remained there for about six months, at the end of which time he returned to his mother in Paterson, and the cost of his schooling and board was paid by the said executors. About the middle of June, 1833, Miss Shultz having ceased to teach school at Newburg, the said Brant Van Blarcom and John S. Van Winkle, executors, &c. gave the said Rachel Van Houten notice that they should send the said Abraham Van Houten to another school in Newburg on the first day of July then next, which school, on making inquiry, they had ascertained to be a good and proper school for the said Abraham; that the said Rachel then denied the right of the said executors to select a school for the said Abra-

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

ham, or to send him to school, or to guardianship over his person for that purpose, but admitted the necessity of his being sent to school to some proper person, and insisted that she had the right to select said school; that she then wished him to be sent to school at Elizabethtown or Caldwell, inasmuch as in case of sickness or accident she would be near him; that she knew nothing about the school at Newburg except what she derived from the executors, but that the school at Caldwell was a good school. The executors objected to his going to Caldwell and insisted on his going to Newburg, as they deemed it best for the boy, as they alleged; but Mrs. Van Houten told them he should not go to Newburg. · That the said executors, on the said first of July, 1833, went to the house of the said Rachel Van Houten, prepared and for the purpose of conveying the said Abraham to Newburg to school, pursuant to their notice; but that the said Abraham was not there, but had been conveyed by the said Mrs. Van Houten to school at Caldwell, New-Jersey, about ten miles from Paterson; that this was done without the knowledge or consent of the executors, and that he still continues there and has been there ever since, without the consent and contrary to the wish of the said executors.

" The executors claim, under the will of Abraham Van Houten, the custody of the person of the child, so far as is necessary to their educating him, and the right of selecting the school and sending him to the school selected by them.

" The said Rachel Van Houten was appointed guardian of the said child by the orphans' court of the county of Essex, on the third of July, 1826, and by that authority claims the custody of the child and the right of selecting a school for him, and of seeing him properly clothed and taken care of.

" Since he has been at school at Caldwell the executors have refused to advance money for the clothing or schooling of the said Abraham Van Houten, on the ground that the custody of the said child for the purpose of education had been withheld from the executors under the said will; the expense of clothing and education, so far as they have been paid, except as herein before

stated, have been paid by the said Rachel Van Houten out of her own property.

"It is admitted that the schools at Caldwell and Newburg were, on the first of July, 1833, both good schools, but that at that time the executors knew nothing of the character of either of the schools at Caldwell or Elizabethtown, and Rachel Van Houten knew nothing of the school at Newburg, but that she had the highest recommendation of the school at Caldwell and they the highest recommendation of the school at Newburg.

*Barkalow* and *E. Vanarsdale*, for the executors.

*A. S. Pennington* and *I. H. Williamson*, for Rachel Van Houten.

Cases cited by the counsel of the executors. 3 *Salkeld*, 176 ; *Moseley*, 108 ; 1 *Vesey, sen.* 90 ; 4 *Bro. P. C.* 302 ; 2 *P. W.* 102 ; 1 *Stra.* 168 ; 1 *Maddock's Chan.* 271 ; *Rev. Laws*, 227, sec. 10 ; 2 *Fonb. Eq.* 247, *note ; Swinb.* 3, ch. 12.

THE CHANCELLOR. From the petitions filed in this case, and the statement of facts agreed upon, it appears that the question to be settled between the parties is as to the power claimed by each over the person of the infant. The mother, Rachel Van Houten, claims as natural guardian, and also under the authority and appointment of the orphans' court of the county of Essex. Her letter of guardianship bears date the third day of July, 1826.

The executors claim under the will of the testator. After making provision for his wife, and disposing of certain parts of his estate, he gives all the residue of his property to his son Abraham, (the infant,) and orders his executors to rent out all his property lying in the towns of Paterson and Hackensack, and all his other houses and lots, and the proceeds thereof, with the personal estate, to put out to interest, for the benefit of his son, until he should arrive to the age of twenty-one years. Then follows this clause : "And I do further order that my executors

29

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

give unto my said son, Abraham Van Houten, out of my estate, a good college education, and a decent support, until he arrives at the age of twenty-one years."

The father, while living, is the natural guardian and protector of his child; and he cannot be divested of the privilege, except under extraordinary circumstances. The statute of Car. 2d conferred on the father a power to appoint testamentary guardians, and the same right exists in this state under an act of the legislature. Where such guardians are appointed, they stand *in loco parentis*, and supersede those appointed by the orphans' court.

In case of the father's death, the mother succeeds to him as guardian by nature; but when a testamentary guardian is constituted by the father, the natural right of the mother must yield to the will of the father. It is paramount, and is considered a continuation of the father's authority. To take away from the mother this natural privilege, the father's intention should be manifest. The words are not important, for the intention will govern: *Swinb.* pt. iii. c. 12.

This is a question of construction, and if the rule of law were settled the court would conform to it; but the cases on the subject are few and unsatisfactory.

In *Bridges* v. *Hales et al., Moseley*, 108, the testator said, "I desire that my son and daughter may be under the care and direction of sir Thomas Hales and Mrs. Hales;" and it was held to amount to the appointment of a guardian. That case is more full, and leaves less room for doubt, than the present. The care and direction of an infant, would seem almost necessarily to imply the guardianship; and *it does* not appear in that case that the mother was living.

In *Mendes* v. *Mendes*, 1 *Vesey*, 90, lord Hardwicke said, the declaration that the wife shall have the education of the children, may amount to a devise of the guardianship; but he does not decide that it will in all cases, or even as a general rule. It might have done so in that particular case, for the person claiming was the mother, who had the natural right.

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

It is given in 3 *Salk.* 176, as a rule of the civil law, that the guardian is to educate his pupil, *pro facultate patrimonii et dignitate natalium;* and this word, education, is said to comprehend food, raiment, lodging, physic and schooling.

In these authorities there is nothing definite to guide us; yet it would seem that the leaning of the courts has been rather in favor of the right set up by the executors.

Not being bound by any judicial decisions or course of practice in the courts, I feel at liberty to take such order in the premises, as a fair interpretation of the will and the justice and equity of the case before me appear to require.

And I think, in the first place, that by a just construction of the will in question, the executors are not constituted guardians of the person of the infant, so as entirely to supersede the natural rights of the mother, or those derived under the authority of the orphans' court. The intention of the testator is not so apparent to my mind, as to justify such construction. When the will was made, the infant was at the breast, and it cannot be presumed that the father intended to give the absolute guardianship of him to strangers in preference to the mother.

I am, nevertheless, clearly of opinion, that the duties of the executors are not limited to the mere furnishing of the money necessary for the education of the infant. They are to give him a good college education. They are not only to provide the means, but they are to see that the thing is done; and for this purpose it is necessary that they should have some power. This must be either a power of supervision, or a power of direction. If of supervision merely, then it will be the duty of the executors to supply the necessary means; and if they are improperly appropriated, or not appropriated at all, to make application to this court for such aid as may be suitable to the exigency of the case. If of direction, then it appertains to the executors, when the infant has attained a proper age, to direct and control his education, by selecting the place or places where he shall be instructed.

In my judgment, it is the power of direction, and not of supervision merely, that belongs to the executors in this case. This

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

opinion is founded on what I consider to be a just construction of the will, as well as in the reason of the thing. The executors are to give the education out of the estate. It is a duty coupled with a trust. They are bound to supply means, but the amount and the manner of application, in its fullest extent, is clearly within their discretion. To give a good education, it is necessary that proper steps be taken early in life, and they must be diligently pursued till the matter is accomplished. In taking and pursuing these, soundness of judgment is to be preferred to tenderness of affection. There must be laid down and maintained a course of moral discipline, as well as mental training ; and for this purpose much discretion is needed in selecting the persons under whose immediate care and government the infant is to be placed.

Generally speaking, the mother of an only son, is not the most suitable person to be charged with these important trusts ; and hence it frequently happens that fathers, by their last wills, give the care and guardianship of their children to friends. In this case, the testator does not order the mother to give the education to the infant, and that the executors shall defray the expense out of the estate. If he had so ordered, it would have been conclusive. Not having done so, it affords ground for the opinion that such was not his intention. This opinion accords with what I consider to be the reason of the thing ; and I feel satisfied, under these circumstances, to say, that the power of directing the education of the infant is vested in the executors.

Having settled the principle, the court feels bound to add, that the power of the executors is very far from being an absolute power, to be exercised arbitrarily and at their mere caprice. It should be exerted tenderly and discreetly, and with a constant reference to the views and feelings of the mother. It is right that she should be consulted as to the disposition of her son, and her desires gratified, if they may be consistently with his interest. In case of a difference of opinion, that of the executors is to prevail. But the mother ought to know, and the executors

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

should always remember, that in case of any abuse of power, or any impropriety of conduct on the part of the executors, this court will always be open to hear complaints and redress grievances. It will look with a vigilant eye upon the conduct of those who are entrusted with the education of orphans, and whatever is wrong will speedily be made right. The general jurisdiction of chancery over them is complete, and the mother has a right to come in at any time and be heard as against these executors. If, to use the language of lord Macclesfield, the court shall have reason to suspect that the infant is likely to suffer by the conduct of the executors, or if they choose to make use of methods that may turn to the prejudice of the infant, the court will interpose and order the contrary: *Duke of Beaufort* v. *Berty,* 1 *P. W.* 705. The executors are invested with a delicate and responsible trust, and the court will interfere against their acts, if acting in a manner inconsistent with their duty: 2 *Kent,* 186; *Jac. R.* 245: 4 *Cond. Chan. R.* 119, *Lyons* v. *Blenkin.* So the chancellor may at any time inquire whether the course of education pursued is such as it ought to be, and whether the school at which the infant is placed is a proper one.

It may be remarked, also, that the power of the executors is not to be extended by implication beyond what is reasonable and proper. It is not that of a guardian, and therefore when the child is not at school, he is to be under the care and protection of the mother; and she is at no time to be deprived of access to him, or prevented from ministering to his wants. In no event is he to be removed without the jurisdiction of the court without the consent of the mother, or the leave of the court.

The infant has been at the school in Caldwell upwards of a year. The court does not think it necessary to remove him thence, simply as evidence that the executors are reclothed with their proper authority. He must be considered as from this time under their control while he remains there. And as changes are frequently injurious, and no complaint has been made of the school where his mother placed him, he is not to be removed thence without having it referred to a master to report upon the

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

expediency of such a measure.    Such reference will be made at any time, upon proper application.

The executors will refund to the mother the amount disbursed by her since the first of July, 1833 ; and, as the court sees no cause to censure either party, it is right that the costs of both petitions, and the proceedings thereon, be paid by the executors out of the infant's estate.

Something was said at the hearing as to the jurisdiction of this court, seeing that the mother claimed authority under a letter of guardianship issued by the orphans' court.    I do not perceive that this appointment creates any difficulty.    It gives the guardian all the power over the person of the ward, that could be given under the circumstances of the case ; and this may be exercised consistently with the rights of the executors.    These, although limited in extent, are, as far as they go, paramount and superior.    Nor is it necessary for the executors to resort to a certiorari to have the letters revoked.    The parties are now before the proper tribunal, and this court has power to do equal justice to all parties concerned, and regulate their respective rights and duties.    The letters of guardianship are general, extending to both person and property, and they can be in no other form when emanating from the orphans' court: *Ten Brook* v. *M'Colm and ux.*, 7 *Hals.* 97.    Yet it will hardly be contended that they give a power to the guardian over the property of the ward ; or that the executors, who have the power under the will, cannot exercise it until these letters are annulled and set aside.

It is accordingly declared, that the right and power of directing the education of Abraham Van Houten, the infant, is by the last will and testament of Abraham Van Houten, deceased, vested in his executors, and that they are entitled to the custody of his person so far as is necessary and proper for the purposes of education.

And it is ordered that the said infant shall at no time be taken without the jurisdiction of this court, unless by the consent of the mother or the leave of the court ; and that the mother shall at all times have free access to him, and when not at school he shall be under her care ; that he be not removed from his present school

[In the matter of the Guardianship of Abraham Van Houten, a Minor.]

without a reference to a master; and that all parties be at liberty to apply to this court for direction.

And it is further ordered, that the expenses of the mother since the first of July, 1833, and the costs of both petitions and the proceedings thereon, be paid by the executors out of the estate of said infant.